Professor, would you introduce your student? Thank you, your honors. I'm Brahm Elias, a professor at the University of Iowa College of Law. You're correct, your honor, our clinic represents the petitioner appellant in this case, Mr. Barajas, and my student Jacob Huyu will be arguing the case. All right. Mr. Huyu, are you prepared? Good morning, your honors. Yes, and may it please the court. It's really an honor to be here today before the Eighth Circuit arguing this case. I have to admit I'm a little nervous. It's my first time here in front of my professor and in front of opposing counsel, who happened to be my eighth grade basketball coach back in Sioux City. Now I'd like to start today by talking about some of the facts briefly. Mr. Barajas was 19 years old when on case. He had come to the United States as a child with his family, grew up in Iowa, became a lawful permanent resident, and graduated from a Sioux City, Iowa high school. On June 11th, 2009, he pleaded guilty to the charges based on the advice of his counsel, which he understood meant that he would be able to remain in the United States after pleading guilty. Unfortunately, that was not the case. Well, when did his lawyer tell him he could stay? At the evidentiary hearing, Mr. Barajas testified that his attorney told him that there would be a chance he would be able to remain in the United States. Chance is not a promise, is it? It's not some commitment that the law isn't going to hold any jeopardy for you? That's correct, your honor. A chance is not a promise. The fact that the case is certain and certain is very important. And the Lee case that we cited to in our 28-J letter a couple of weeks ago, and opposing counsel responded to a couple of days ago, has some important language about that towards the end. Chief Justice Roberts says that, but for his attorney's incompetence, Lee would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? Almost certainly. And that almost could make all the difference. Now, under Strickland, in ineffective assistance of counsel claims, there's the two prongs, deficient performance and prejudice. And Lee talks to the prejudice issue pretty directly. How do we get to the Strickland issues when we've got a issue of retroactivity of the applicable Supreme Court precedent? Well, your honor, under the two types of deficient performance, Mr. Perry affirmatively misadvised Mr. Barajas regarding the certainty of deportation. You can help me there because as I read what we have in our record about the conversation at the bench, I didn't get the impression that it seemed like the judge wasn't certain that the defendant would be deported, seemed to have hold some optimism that perhaps he wouldn't be understanding his circumstances and youthfulness. And it seemed that the lawyer didn't make any strong affirmative statement. He simply was more silent than representative of a viewpoint of the law. And it seemed that at best, prudence would have indicated on the part of the appellant to inquire and not rely on the absence of a statement. I don't, is there anywhere in the record where someone, either the judge or the defendant or the attorney told him you will not be deported? Respectfully, your honor, the test is not whether they told him you will not be deported. The Eighth Circuit has not really decided on the difference between failure to inform and affirmative misadvice. But going to leave that paragraph that I read earlier, that difference really points to affirmative misadvice. And the Eighth, within the Eighth Circuit, the Eastern District case that we cite from Sedgepole of the United States, where the advice was, it was not certain one way or the other. In that case, the district court held that once the advice is given, that takes you out of an analysis of a failure to inform. And that's what exactly what we had here. And again, why wouldn't Teague prevent this from being a reversible condition? Right. Under the affirmative misadvice, both before Padilla and after, courts had found that even though it was a collateral consequence before Padilla, advice about the deportation consequences could be found to be deficient performance under Strickland. And we cite to a number of cases in the first, the Cotto-Gegendergadkar in the Fourth Circuit, Kwan in the Ninth, Downs-Morgan in the Eleventh, where before Padilla, affirmative misadvice about deportation proceedings was deficient performance. And then even after Padilla and after Chaidez, courts had found that affirmative misadvice survived the Teague-Chaidez-Padilla analysis. I guess the key is whether this is affirmative misadvice. You're correct, Your Honor. Have a chance. And we would argue that that is affirmative misadvice because it is advice given that was incorrect. The immigration statute was clear at the time that being convicted of an aggravated felony renders you deportable. But isn't there a chance that the government elects not to enforce that? Under the facts of this case, that was not the case. And... That's essentially, I think, what DACA is, isn't it? The government electing... It is, Your Honor. However, under DACA, being convicted of an aggravated felony would not be a possibility. Mr. Barajas would not have qualified for DACA. And he was also a lawful permanent resident. The point is that the government can elect not to enforce, or at least some argument can be made that they can elect not to enforce some of those things. So there might have been a chance. Respectfully, no, Your Honor. And in Lee v. United States, citing to Calcano v. INS, I believe, the Supreme Court recognized that being convicted of an enumerated aggravated felony under the INA renders you deportable. And the... I agree completely. It renders you deportable. But that doesn't necessarily mean you will be deported, does it? It may not, Your Honor. Furthermore, in this case, however, under the failure to inform about the permanency of deportation, now that he's out of the United States, Mr. Barajas is permanently banished from reentering. So under 8 U.S.C. 1182-8982, he's not able to return to the United States because he's permanently inadmissible without waiver. Let's say you carry the day on the affirmative misadvice. Can you show prejudice? Can you show that he wouldn't have taken the plea offer given the strength of the evidence against him? Respectfully, Your Honor, that's not the test for prejudice in these types of plea cases. Under Hill v. Lockhart, the test is whether it's reasonable for the defendant to choose to go to trial or to choose not to plead guilty and insist on going to trial. And Lee clarified that when there's the Hail Mary's chance of succeeding at trial, when the alternative is a plea leading to deportation, it is reasonable to choose to go to trial, especially when you have strong ties to the United States, as Mr. Barajas does, coming here as a child and really only growing up in the United States. Returning to the difference between failure to inform and affirmative misadvice, the district court, in the original opinion under Judge O'Brien, characterized the deficient performance as a failure to properly inform, which in our opinion, or in our view, really goes to the affirmative misadvice. If you're improperly informing, that is the wrong advice. And when it came to Judge Strand, he accepted Judge O'Brien's findings of fact and cited to them, when he characterized the deficient performance, he characterized it as a failure to fully inform and cited to a rule that he had created himself without authority. And as I said, leave the United States kind of gets to this really important constitutional issue of the difference between almost certain and certain when the outcome is permanent deportation. The district court granted a certificate of appealability in this case. It did, Your Honor. What was the specific issue on which the court granted the certificate? It was on the issue of whether Teague applies to federal review of federal convictions under ineffective assistance of counsel. To what extent is that an open question in our court? It's a completely open question in this court, Your Honor. Your best case for persuading us that we should adopt your position is what? Under the failure to inform version of the deficient performance in this case, it is an open question. Looking to Chida's footnote 16, the Supreme Court recognized that no lower federal courts had decided the question and they were choosing not to decide at that time. So Teague, the non-retroactivity rule in Teague, as we discussed in our briefs, is based on protecting comity and finality. And comity is not at issue in this case because it's federal review of a federal conviction. Finality is protected by this high bar that Strickland places on finding the prejudice and deficient performance. Are there any circuit courts that have ruled in the way you're asking us to? No, Your Honor, not that we have found. The opposing counsel cites to the In Re Infituara case, but they kind of dismissed the question as well in a footnote. Which case was that? In Re Infituara, the Fourth Circuit case, I believe. Well, what about the First Circuit's opinion in the United States versus Vincent F. Castro Tavares? I think you cited that in your 28-J letter. Yes, Your Honor. And Judge Lopez goes through a very, very lengthy analysis, very closely reasoned. I like what he said about the criticism of Teague versus Lane, or Teague versus whoever it was. I believe we say, yeah, the scholar, yeah, there's a lot of criticism of that decision because as somebody said, how do you, it's virtually impossible to satisfy, but that's either here or there. I thought that Judge Lopez's opinion might be very, might be persuasive for your position, but maybe I'm, I guess I misread it. I believe the Castro Tavares case, Your Honor, goes more towards the affirmative misadvice, surviving the Chaita's analysis. I see. Because we expect attorneys, when they give advice, even before Padilla, whether it's about collateral consequences or not, that advice needs to be correct. Now, returning to the prejudice issue of, under Lee, we understand that the court, we apprised the court of this only two weeks ago, and that Judge Strand did not have the benefit of Lee in his analysis of this case. It may be appropriate to remand to allow him to decide the case in light of Lee as well. I see that my time is up, so I would like to continue if you like, or you can reserve your time for rebuttal. I'd like to reserve a little time for rebuttal. Thank you. Mr. Wadey. May it please the court, counsel, my name is Sean Wade, and I'm an assistant U.S. attorney for the Northern District of Iowa, representing the Northern District of Iowa in this particular matter. This is an appeal of the denial of an ineffective assistance of counsel claim under 2255. Despite the appellant's contention, this is essentially a failure to reform case, and Padilla, Chaydez, and thereby Teague is essentially controlling in this case. Defense is essentially asking the court to go a new way here in this circuit in regards to this issue with that type of precedent. Essentially, in a case of this nature, to find ineffective assistance of counsel, you have to either fail to inform or fail to inform regarding the deportability of a criminal defendant. This is clearly not misrepresentation. I'll get to that in a minute, but fail to inform before Padilla misrepresentation, as I think you mentioned. Yeah, it's kind of a close call. I mean, the failure to he did inform him something about it and said, you have a chance. He had no chance, so that's a misrepresentation. How do you respond to that? Well, what he said, and it's detailed, he said, you're likely to be deported. You should assume to be deported or you should plan on being deported, things of that nature. I mean, it's almost a certainty you will be deported or after you spend enough time, the marshal service will refer you to immigration, which will likely deport you. The only word he doesn't use is you certainly will be deported. Now, I know the district court, Judge Strand, makes the finding that the statute does make it a certainty. Well, because it's an aggravated felony and therefore he would be deportable. But as you noted, and as Chavez actually kind of exemplifies, at least the potential of that, is that you can have a situation which on statutory grounds is clear or appears to be clear, but isn't enforced. I mean, Chavez, she applies for citizenship after being out of prison for a number of years, after clearly being certainly deportable under the statute, probably, although it's arguable, I guess, and to some degree, she doesn't raise that. She doesn't apply for citizenship or seek that. She doesn't get deported. We hear of those types of cases all the time. As a prosecutor, I hear those cases all the time in the sense of somebody suddenly is deportable. When why did it take so long? Why was it not done? Essentially, somebody dropped the ball somewhere. Someone just didn't enforce it. So it's kind of a fact of bureaucracy, especially in these types of situations. How wrong does the advice have to be before it's actionable, as it were? How long what advice? The misadvice? How wrong does the counsel's advice have to be before it's grounds for relief? Well, as the district court found and as the case law leaves one where you have an active fair, I mean, you have an active misrepresentation, you will not be deported. That's what Judge Strand noted. He was not told you will not be deported. He was not told you will likely not be deported or assume you will not be deported. He was told you will likely be deported. And the only word not used in the way in which the district court framed it is the fair to inform was the certainty, the absolute certainty, which it really is an absolute certainty in practical application. It is absolute certainty in regards to if you look at the statutes. But again, this is a fair to inform case. Before Padilla, misrepresentation would maybe get you relief, but after Padilla. Let me interrupt. Failure to inform what is. How do you pronounce his name? Excuse me. Anyway. What is he claiming he should have been informed of specifically the wording that should have been used? I think what's framed in the briefing is that he should have been informed that he would absolutely certainly be deported. And probably also you can't ever come back, right? I think the district court also threw that in that you probably that you would be certainly deported and you would not be able to come back. There were no there were no representations at all on the latter part. No, there were no representations. And that's clearly a failure to inform. Clear, yes. So after Padilla, you need to fail. Failure to inform becomes applicable. But in this case, the defendant was convicted six months before and as Chai doesn't is basically laid out almost in an exact similar situation here that it doesn't apply. Padilla doesn't apply. Teague applies. The interest of finality applies in regards to criminal convictions, as outlined in Teague. How does the defendant try to get around this? The defendant is basically arguing that Teague is not retroactive and then also argues that it's a misrepresentation, which we've kind of touched on. In Padilla, there was a new rule of law, a new procedural rule wasn't dictated by precedent. Defendant's conviction was final before that. Prior to Padilla, counsel didn't have to advise of those types of consequences. Subsequently, you only had to advise of criminal consequences or criminal based consequences. After Padilla, you have to advise regarding deportation. Says that the district court doesn't apply to federal cases. That's one of the arguments that the defendant tries to raise. However, all the federal courts that looked at this have, as the district court found, and this circuit have looked at and applied Teague to federal prisoner cases. Now, sometimes that's by consent of the parties or by, you know, such as Welch, which was a Johnson based case where the court assumed since the parties were treating it in that way, that it would be treated that way. But the fact of the matter remains that all the federal jurisdictions decided by the district court have applied Teague to federal cases. Has any court of appeals ruled in favor of a petitioner? Not that I'm aware. But not on this type of case. In other words, you don't think the First Circuit opinion has any bearing on the facts of this case? I think as opposing counsel noted, I think that deals with a affirmative misrepresentation, not a failure to inform. I believe that's where that that case lies. And the great what is the policy reason that would say we should not apply it to the failure to inform? Well, it's a finality based argument, I guess. In other words, what would be the ground shaking impact to your office and every other U.S. attorney's office around the country? Well, in cases like this where it's to people coming back five years later. Saying I was misinformed, I was not informed, I was badly informed. Well, you would you could certainly have that, but more importantly, you'd have the fact that defense counsel, such in this case, Mr. Perry, being required to advise regarding matters that were clearly not the law before. He's not misadvising. He just he would be failing by by not you would be holding defense counsel in pre-pedia cases to have needed to inform about collateral consequences when clearly across the board, I believe it's 10 circuits and I think 28 out of 30 district court opinions were cited by the district court in this case. All said that that was the way the law was before. You'd be holding defense counsel to new rules that they couldn't possibly have thought would apply. Now, this case would be different had Mr. Barajas raised this and have his case on direct appeal when the Supreme Court changed the law. That would have that that's a different case. That would be correct. But a collateral attack, you hit the wall. Is that that is correct? That is correct. And as outlined in Teague, that the reasons it goes through some of the somewhat of a detailed analysis talks about it. But finality and collateral proceedings, we need to have some type of finality in criminal proceedings over time for deterrence effects, expectations effect, direct review is different. Collateral review is, you know, much more indirect, I guess, and delayed in its impact on cases because it can be years before it can have an impact on cases and it can undermine basically the deterrent effect and the expectations of the criminal law. Was there anything in the law to indicate that there is a difference between a 2254 collateral attack and a 2255 collateral attack when it comes to the application of? I didn't see any difference noted in any of the record here. But again, I'm the fourth attorney on this case, so I question would be whether Teague's based on comity or or on finality. And I think as we note in our brief, it would be the difference. Say what? That would be the difference between a 2254 and a 2255. Correct. Correct. Correct. And as we noted, Teague spends a lot of time talking about finality. I mean, it does mention it does talk about comity as well as it says it's important, but it doesn't seem if you look clearly on the amount of time it spends talking about finality versus the amount of time it talks about comity. It seems to I guess the primary focus appears to be finality in Teague in Harlan's great discussion in regards to it on a variety of different levels. But it does also mention comity, which is important. But I think the emphasis in Teague was finality. And I think finality is important in the criminal justice system, especially when you're trying to look at it, when you consider the fact that collateral review can undermine it in that way. And again, why is it that you say that Lee versus United States has no relevance to this case? Well, Lee is an affirmative misrepresentation. I mean, even the government had conceded, the trial counsel conceded that he told the defendant in that case, not that you may not be deported or you might have a chance of staying in this country, you might have a chance coming back. He told that defendant, you will not be deported. It's not in the plea agreement. Therefore, you know, it's not in the plea agreement. You will not be deported. That was an affirmative misrepresentation in that particular case, which is completely different than in this case where he said repeatedly, as even the district court, both district courts found, Judge O'Brien and Judge Strand, he repeatedly said you will likely be deported. You will likely serve time and be referred to the immigration authorities and be deported. You should plan on being deported. You should assume you should be deported. But they didn't use the word certainty. That's a big distinction between just not saying certainty and saying, absolutely, you will not be. And that's the distinction in Lee why it's not applicable to this case. And so putting T out of the mixture, he can't prevail under any circumstances. Sorry. In other words, under the facts in this case, the he did not know the fact that he's going to be likely to be deported. No, you couldn't say that. I mean, one of these wishful thoughts after the fact, I'll give it a try and see what will happen. I mean, if you look at the record, characterize it. That's boldly. But I just did. The attorney did everything but say the word certainty. The court even referenced the likelihood of it. And the court even varied at the request of defense counsel. I'm very down for that purpose. When I asked before, how wrong does it have to be? Your response, the advice have to be here. There is really nothing wrong with the advice because it's. Did it speak the truth that you're likely to be deported? But the truth, truth was what? That he was going to be a reporter deported by statute. It was an aggravated felony. He the statute said he should be deported or would be deported. The trouble is, as Justice Gruner brought up the application of that, Chavez is an example of that. The practical effect of that is that it isn't always the case. But yes, I think bottom line, Pat Perry's advice was probably spot on. It was in percentages, but 99 percent or whatever was he implying you are going to likely be deported is probably deadly accurate on the practical application of the mandatory law. So it will not lie in Mr. Barris's mouth to say that I was not given fair warning about what happened. He was given fair warning and it was a fair to inform as found by the district court. That concludes my comments. And this, of course, have any questions. Wait, were you were you Mr. Who used basketball coach? No, the professor was. Yes, it was. Oh, somebody else. You were the basketball coach, but you don't remember. I don't know from where. I just wanted to know if he was any good, that's all. Certainly I was good. I was with John Pritchard and company. Well, my son was there, too, yes, but I didn't notice it. Thank you, Mr. Well, we're hoping your legal career is more memorable than your basketball career. I would, too. I think I only scored four points the whole season, but I'd like to clarify your honors that we do agree with opposing counsel that this was a failure to inform regarding the permanence permanency of deportation. Now, it seems to be that there's a question about whether the affirmative  of deportation did apply here. I'd like to read some of the things that Mr. Perry characterized in his evidentiary hearing. I told him he would probably be deported or almost certainly. However, at the sentencing hearing, he said, there is no guarantee it is going to happen. And Mr. Barajas, what he said in his pro se petition, counsel told petitioner not to worry, had he known of his possible deportation, he would have insisted on going to trial. Now, the central question here is whether this court will uphold Mr. Barajas' Sixth Amendment rights to effective assistance of counsel. And there really are the two pathways, finding affirmative misadvice, um, under Strickland and Lee, or under the failure to inform, finding that Teague does not apply. Now, I'd like to counter what opposing counsel said about Teague as well, that 2255 has applied to federal cases. It has not ever applied to federal ineffective assistance of counsel claims brought on 2255. And as we know, those are encouraged to be brought. I believe it was Judge Grunder yesterday that, um, who asked the question and counsel yesterday answered, this court encourages those to be brought on collateral appeal. Um, Mr. Barajas could not have really brought this on direct appeal. Mr. Perry was his counsel. Um, so I've asked this court to uphold Mr. Barajas' Sixth Amendment rights to effective assistance of counsel. So he's allowed to reenter the United States. Thank you. Thank you, Mr. Hu Yu. And court wishes to thank the Iowa Law School Clinic for, uh, participating in an argument and providing counsel for the petitioner in this case. Thank you very much. Court will take this case under advisement, render decision as promptly as possible. Thank you.